By the Court. Emmet, J.
The first question to be examined relates to the exclusion of the evidence offered.
The order given by Mr. Upton on the 15th October, 1850, and its subsequent modification on the 1st February, 1851, taken together as they necessarily must be, mean simply a direction by Mr. Upton to the defendants to account and make settlement with the plaintiff for the proceeds of the sale of the pamphlet to this end that his bill for printing should be therewith paid; and,as the order was given long after the printing and delivery to the defendants of the second edition, it related to -the proceeds of sale of both editions. It admits of no other construction : and without stopping to consider how an order on the defendants for the proceeds of sale of the second edition can be reconciled with the claim that several months before, the defendants had ordered that edition on their own account and as their own property, and for their own benefit, let us examine what the effect of that order was as to the transaction between the defendants and the plaintiff’s agent on the 10th April, 1851, and as to the propriety of excluding the evidence offered by the defendants of what took place on that occasion.
The plaintiff had no interest in the proceeds of the sales of the pamphlet, except as a fund to be applied to the payment of his bill for printing, &c. Mr. Upton’s order shows this distinctly on its face.
The authority therefore which he obtained by the order was to demand from the defendants an account and settlement of the proceeds in order that they might be so applied ; and his *31 agent made application to the defendants, not as an ordinary collector of a hill against them, hut as a person deputed by him to exercise the authority he had been vested with by Mr. Upton, that is to say, to get an account of the proceeds, and make a settlement as to whatever amount might on such accounting appear to be in their hands. The plaintiff by his own act has shown that he so considered it. If the $92.69 were received an account of the bill for printing the second edition only, for which he alleges the defendants contracted with him, he was bound to have credited that payment exclusively to the expense of printing the second edition, but the bill of particulars annexed to his complaint shows that this credit was given upon the whole account, for printing both editions, and that it was received therefore as proceeds accounted for, towards the plaintiff’s whole bill, and not as a payment on account of the bill for the second edition, or of any recognized or specific demand, which the plaintiff then claimed to have against the defendants. With these facts already in the case, the defendants had a right to show that a statement of their accounts in connexion with the pamphlet, was exhibited to the agent; that the money was received by him on that basis, in full of all claims against the defendants by reason of the pamphlet to that date; and that the defendants notified the plaintiff" through such agent that the unsold copies in them hands were subject to his order, without any claim to them on their part; and the evidence offered by the defendants for that purpose was improperly excluded.
Second, as to the judge’s charge. The evidence of Mr. Upton shows that he had three interviews with the defendants, or one of them, Mr. Stringer. That at the .last of these interviews, which was on the morning after the order for printing the second edition had been given, Mr. Stringer asked permission to have an advertisement of Stringer and Townsend printed on the cover of the second edition, and that Mr. Upton made no objection, or in other words, consented, so far as he was concerned. Mow the asking of this permission only one day after the alleged order, and the character of Mr. Upton’s answer to it, are pretty strong “ circumstances of the transaction and of the parties to it” in the language of the judge, to guide the jury in deciding not only what was Mr. Stringer’s meaning and *32 Mr. Upton’s understanding of what Mr. Stringer said to him when he requested him to order the second edition, but also what was the fair construction of that request. For assuredly if the defendants had ordered the second edition on their own account, at their own risk, and for their own, benefit, they required no permission from Mr. Upton or any one else, to have what they pleased printed on the cover; and the fair presumption is, that Mr. Upton would have told them as much, if he then considered that they had given such an order.
This third interview was the most important part of the res gestae upon which the jury were to make up their verdict (except indeed the subsequent order given by Mr. Upton to the plaintiff on the defendants for the proceeds of sales), and instead of being excluded from the consideration of the jury it should have been directly brought to their notice.
It is no answer to this, to say that this conversation was after-the order was given, and that the plaintiff was not present at it. Neither was. he present at the second interview. Mr. Upton was the medium through which the order was given, if Mr. Stringer gave it; Mr. Upton was the witness called to prove it;, and Mr. Upton must necessarily by his acts and language be the interpreter of it. The law is not so imperfect in its administration of justice as to give the plaintiff the chances of yesterday’s uncertainty, and deprive the defendants of the benefit of to-day’s explanation; and where the attempt is to fasten - a contract on a party for a losing undertaking, by inference from circumstances and conversations, he has a right to ask at least, that all the circumstances and all the conversations relating to the matter should be taken into consideration.
The .defendants’ counsel expressly requested the court to charge the jury that all the conversations should be taken together for the purpose of determining the legal effect of what was stated in the second interview, but the judge instructed them that they were to be guided in this respect by all the circumstances that had taken place in relation to the printing and publication of the pamphlet from Upton’s first seeing the defendants until the second interview at which it was alleged the printing of the second edition was ordered.
He therefore excluded from their consideration the conver *33 sation which, took place between Mr. Upton and Mr. Stringer at their third interview; and upon that ground, the charge having been excepted to, as well as for the exclusion of evidence before referred to, the verdict should be set aside and a new trial granted.